**Wayne Edward HAILEY, Petitioner,**

v.

**David A. GARRAGHTY, Warden, and Attorney General of the State of Virginia, Respondents.**

**Civ. A. No. 83–0107–D.**

United States District Court,
W.D. Virginia,
Danville Division.

Oct. 28, 1983.

Wayne Edward Hailey, pro se.

Robert H. Anderson, III, Asst. Atty. Gen., Richmond, Va., for respondents.

## MEMORANDUM OPINION

KISER, District Judge.

Petitioner, Wayne Edward Hailey, presents his petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254, attacking his state convictions for robbery, abduction, and use of a firearm in the commission of both felonies. The focus of the petition concerns the constitutionality of prosecutorial comment on Hailey's post-arrest, post-*Miranda*-warning silence.

### I.

Tried by a jury on a four-count indictment charging robbery in violation of Virginia Code § 18.2–58, abduction in violation of Code § 18.2–47, and use of a firearm in commission of robbery and abduction in violation of Code § 18.2–53.1, Hailey was convicted and sentenced by the Circuit Court of Halifax County to terms of twenty (20), five (5), one (1), and one (1) years, respectively, on the various counts. His petition for appeal to the Supreme Court of Virginia was refused on April 19, 1983.

---

Specifically, Hailey alleges that the prosecutor's cross-examination of him regarding his post-arrest silence constitutes reversible error under *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) and that accordingly, the trial court erred in overruling his motion for a mistrial. In a joint Motion to Dismiss/Motion for Summary Judgment pursuant to Fed.R. Civ.P. 12(b)(6) and 56(b), Respondents David A. Garraghty, Warden, and the Attorney General of Virginia maintain that: (1) the mistrial was properly denied since any error stemming from the cross-examination of Hailey on his constitutional right to silence was promptly remedied by the trial court's curative instruction; (2) Hailey's motion for mistrial was dilatory and thereby precluded under Rule 5:21 of the Rules of the Supreme Court of Virginia and *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); and (3) any error under *Doyle* was harmless beyond a reasonable doubt.

## II.

The Commonwealth's chief prosecution witness at trial was Richard Clardy, an elderly man who runs Clardy's Grocery, a country store in Halifax County, Virginia. Trial transcript at 26–56. Clardy testified that around 1:00 P.M. on September 28, 1981, Hailey came into his store and threatened to kill him unless he gave Hailey Clardy's .22 caliber revolver. Once Hailey had the gun he announced that this was an armed robbery and took money from Clardy and the store's cash register.

When two customers, Otis R. Brandon, Jr., and his sister, Willie Brandon, came into the store Clardy tried to signal that something was wrong by hitting Brandon's leg. According to Otis Brandon, he realized a robbery was in progress soon after entering the store because he saw Hailey turn his back to him and stick the revolver in his pants and because Clardy winked at him and stepped on his foot. Brandon then left the store and contacted the police. Trial transcript at 56–60.

After the Brandons left, Hailey then took Clardy's automobile and, at gunpoint, forced Clardy to accompany him. Clardy explained that over the next several hours Hailey drove around Halifax County, stopping at various points to purchase additional gas, cigarettes, and beer. At the first store, Hailey warned Clardy that, "If you give me away, I'm liable to kill four or five in the store. . . . If you do as I say, I won't harm you." Trial transcript at 35–36. Clardy remained in the automobile while Hailey took the keys out of the ignition and went inside. When Hailey returned, he told Clardy that he had heard over the police scanner that the police were looking for him and said, "I ain't got no other choice but to kill you." Trial transcript at 36.

They stopped at another store and then Hailey stopped the automobile on a secluded dirt road. They remained there about two hours during which time Clardy was ordered to get down on his knees and pray. At that point, Hailey shot two times and remarked to the frightened Clardy, "The next one will go between your eyes." Trial transcript at 38. They next got back in the automobile and drove around a while longer. Finally, at the last stop the police apprehended and placed Hailey under arrest.

Investigator F.E. Austin of the Halifax County Sheriff's Department testified that the police first received word that an armed robbery had occurred at Clardy's Grocery early in the afternoon; that after an extensive county-wide search Hailey was arrested at approximately 6:00 P.M.; that he had $275.00 in cash on his person; that the revolver Hailey carried was partially loaded; and that bullets were recovered from inside the automobile. Trial transcript at 61–64.

Taking the stand on his own behalf, Hailey, a 28 year old tobacco worker, explained that on the day in question he originally went to Clardy's Grocery to buy several items. There, he and Clardy drank beer and played poker together. After Hailey had won a substantial amount of money, Clardy became very angry, accused him of cheating, and pulled his revolver. Hailey wrestled the weapon out of Clardy's hand.

When the Brandons came into the store, Hailey, not wanting to lay the gun down where Clardy could reach it, stuck the gun in his belt. He stated that throughout the afternoon he and Clardy rode around and drank together. He denied ever threatening to kill Clardy. Trial transcript at 70–92.

On cross-examination, the following dialogue occurred:

"Commonwealth's Attorney: Have you made any statement to the police at all?

Hailey: I haven't made no statement.

Commonwealth's Attorney: Have you told anybody about this before?

Hailey: No.

Commonwealth's Attorney: Why not?

Hailey: I've told—

Commonwealth's Attorney: If you were there and it was a mistake—

Defense Attorney: This is not only badgering, this man has a right to remain silent and I personally have instructed him. I would be a right lousy lawyer if I told my client to talk to the police officers.

The Court: It's cross-examination. Don't raise your voice, simply ask the question and let him answer it, whatever it might be, and let's go ahead.

Commonwealth's Attorney: Very well.

Defense Attorney: I don't think the question is proper, your Honor.

The Court: He did have a right to remain silent if he wanted to.

Commonwealth's Attorney: I realize he had the right to remain silent.

\* \* \* \* \* \*

Commonwealth's Attorney: Did you try to tell them [the police] what happened?

Hailey: I tried, but they don't listen.

Defense Attorney: Your Honor, I'm going to object to this entire line of questioning. It's improper, counsel knows that it is.

Commonwealth's Attorney: I'm finished as far as that is concerned, I'm ready to go on to something else.

The Court: All right, gentlemen."

Trial transcript at 84–86.

Hailey denied robbing Clardy and explained that the large sum of money he had at the time of his arrest had been earned from working in tobacco and from the winnings he received in the poker game with Clardy. He further said that the whole episode was a misunderstanding; that the afternoon ride with Clardy had been friendly; and that they had talked and drank. As to the shooting of the revolver, Hailey testified that he had, with Clardy's permission, shot twice at a beer can. Trial transcript at 70–92.

Gail Powell, the owner of one of the country stores Clardy and Hailey had stopped at that afternoon, testified that while Hailey was inside the store she watched Clardy, who had remained in the automobile; that Clardy was smoking a cigarette and conversing with several men; and that from her observation Clardy did not appear agitated or upset. Trial transcript at 94–101.

Recalled as both a defense and then rebuttal witness, Clardy stated that he had nothing to drink on the day in question; that he had never played cards or gambled in his life; that he and Hailey had not done so on any occasion; that the reason he did not try to escape was because of Hailey's threats and his being physically unable to run; and that when the police finally arrested Hailey he was so upset that he began to cry. Trial transcript at 67–69; 109–112.

Sheriff Woody Bane, Sheriff of Halifax County and one of the officers at the scene of the arrest corroborated Clardy's statements that he was very distraught and crying and stated that Clardy had collapsed in his arms. Bane added that while close to Clardy he tried to determine if he had been drinking, but smelled no alcohol of any type on his breath. Trial transcript at 101–103.

Finally, Barbara J. Hudkins stated that she worked regularly in Clardy's Grocery; that she had known Clardy for about 6 months; that she had never seen him play cards; that she had seen Hailey in the

store before; that they were not good friends; that Clardy had no problem with alcohol; that she had asked Clardy to play cards with her several times but he said he did not know how; and that there were playing cards for sale in the store. Trial transcript at 107–109.

At the conclusion of all the evidence, *after* the jury instructions had been prepared, Hailey's renewed motion to strike the evidence had been denied by the court, and the defense attorney made his initial motion for a mistrial, the following discussion transpired out of the presence of the jury:

"Defense Attorney: I would also make a motion for a mistrial based on the Commonwealth's improper questioning of the defendant, asking him about why you have not brought this story forward before. It was extremely prejudicial to him. He had a right to remain silent and had a right to remain silent throughout with any confrontation with the police.

And essentially the Commonwealth has used that against him throughout its cross-examination. And also I believe that over our objections that the Court permitted him to go even farther afield. That since the Commonwealth on discovery did not show us any statement or anything, then we would submit that his silence was something that was entirely proper which the Commonwealth should never have gone into.

For that reason we would ask that a mistrial be declared.

The Court: Well, I think the motion is rather dilatory at this stage. Again, you did make your objection and the Court did explain or undertake to tell the jury that he had a right to remain silent.

However, I will instruct the jury if you would care that I do so that he did have the right to remain silent and that his failure to say anything cannot be used to prejudice him if you want me to do it.

Defense Attorney: I think a cautionary instruction would be the very least the Court could do. We, of course, feel it is insufficient, but even so, it's doing something.

Commonwealth's Attorney: Your Honor, it is my understanding that his lack of denial upon being charged and then when he gets in court and says that and the fact he is saying something here today that he has not brought up before is certainly even arguable—

The Court: I have used that many times as a Commonwealth's Attorney. I just don't know under the present state of the law whether it is permissable or not. He does have the right to remain silent and the fact that he does probably should not be used against him.

Commonwealth's Attorney: That's in the courtroom, Your Honor.

The Court: In the courtroom—

Commonwealth's Attorney: In the courtroom during a trial. And the fact once he gets on the stand and the fact that he tells something—

The Court: He has the right under *Miranda* to remain silent. I just think it—I tried to tell the jury at the time. I think the motion is dilatory and I will overrule it on any one of those bases. I do feel in utter fairness to this defendant I should repeat to the jury that they should not use that against him and I will do that." Trial Transcript at 114–116.

The jury then returned to the courtroom and the court began its instructions:

"The Court: Ladies and gentlemen, during the process of this trial the Commonwealth's Attorney made a point of it to the defendant of the fact that he did not relate these matters that he was testifying to at the time he was arrested or thereafter. And the Court would like to tell you that a man charged with a crime or defendant has a right to remain silent and it is not encumbent upon him to say anything unless he wants to say something, and the fact he does not say anything should not be used against him.

Do you understand what I'm trying to tell you? Can you ignore that part of this case and render your verdict on the evidence as you have heard it, the other evi-

dence? All right, thank you." Trial transcript at 117–118.

After the jury returned its verdict, Hailey's attorney made a motion to set aside the verdict which was overruled.

### III.

In the landmark case of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that in custodial interrogation situations an accused must be clearly informed of (1) his right to remain silent; (2) that any statements he makes can be used against him; (3) his right to consult an attorney; and (4) that if he is indigent an attorney will be appointed by the court to represent him.

Ten years later, in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the question of whether a state prosecutor is allowed to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining him about his failure to have told the story after being arrested and having received *Miranda* warnings arose. Pointing to the accused's right to post-arrest, post-*Miranda* warning silence, the court concluded that such questioning is constitutionally prohibited by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In reversing the two drug-related convictions, the majority opinion expressly declined to address the issue of whether this constituted harmless error, stating only that the state had failed to argue this point. 426 U.S. at 619–620, 96 S.Ct. at 2245.

In the cases of *Reid v. Riddle*, 550 F.2d 1003 (4th Cir.1977) and *Williams v. Zahradnick*, 632 F.2d 353 (4th Cir.1980), however, the Fourth Circuit Court of Appeals addressed the precise question left open in *Doyle*. The accused in *Reid* was convicted of first degree murder. At trial, the prosecuting attorney had asked, on cross-examination, whether the accused had informed the police or anyone else that he had stabbed the victim in self-defense. Defense counsel immediately objected to the question and moved for a mistrial, but his objection was overruled and the mistrial

denied. In closing arguments, the prosecutor, attempting to discredit the accused's story as a recent fabrication, reminded the jury that the accused had not claimed self-defense until the trial itself. Upon defense counsel's renewed objection, the court instructed the jury of accused's constitutional right to remain silent but refused to grant the defendant's proposed instruction that the jury not consider his silence as evidence.

On appeal, the Commonwealth conceded that a *Doyle* violation had occurred but maintained that any error was harmless. 550 F.2d at 1004. In its per curiam opinion, the court, on these facts, held that it could not say beyond a reasonable doubt that, absent the prosecutor's two references to the accused's silence, the jury would have rejected the defendant's story. *Id.*

In *Williams*, there were four prosecutorial references to the accused's post-arrest silence. Two of these involved questions posed on cross-examination of the accused, while the other references occurred in the prosecutor's closing and rebuttal arguments. Counsel for the accused failed to object to the initial question, but upon the second reference objected to the entire line of questioning as well as the improper arguments and made two motions for a mistrial. As in *Reid*, the trial court overruled the objections and denied the motions for mistrial.

Initially, the Fourth Circuit dealt with the procedural issue of the effect of the Virginia contemporaneous objection rule upon a federal court's consideration of the merits of petition for a writ of habeas corpus. Pointing to the repeated references to the accused's silence and counsel's objections to every reference beyond the first cross-examination query, the court distinguished *Wainwright v. Sykes, supra,* and found the contemporaneous objection rule had been complied with.

Next, the references to post-arrest silence were held to be constitutionally repugnant under the *Doyle* rule. In deter-

mining whether such error was harmless the court explained:

> Whether an error is harmless is established through a case-by-case determination, reached after weighing the prejudicial effect of the improper evidence against the probative value of the properly admitted evidence. The variables and the weights to be assigned them vary in each case.

> The factors to be weighed include:

> 1. The use to which the prosecution puts the postarrest silence.
> 2. Who elected to pursue the line of questioning.
> 3. The quantum of other evidence indicative of guilt.
> 4. The intensity and frequency of the reference.
> 5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions. Our listing of factors so far identified as relevant to the issue of whether mention of postarrest silence was harmless error is not intended to be exhaustive or exclusive. However, it suffices to solve our problem here.

> Of course, such an approach, awarding points on the basis of how the present factual situation measures up against tests devised for other cases need not constitute an absolutely foolproof one. We do not suppose that we have identified a universally applicable touchstone. Still a score of 5 to 0 is conclusive for the purposes of the present case. Considering the balancing exercises in which other courts have engaged in analogous situations where several of the test factors were present reinforces our conclusion.

632 F.2d at 361–363 (footnotes omitted). Applying this five-factor test, the court concluded that the repeated error committed by the state prosecutor in that case could not be deemed harmless.

■ Turning to the facts of the case at bar, I initially point out that the Commonwealth's Attorney's references to Hailey's exercise of his right of silence is, as Respondents concede, clearly an error of constitutional dimensions under *Doyle*. Thus, my task is to determine whether this violation is the type of harmless error referred to by the Fourth Circuit in the *Reid* and *Williams* opinions. After careful review of the entire record of the state court trial including the trial transcript as well as the five-prong test enumerated by the *Williams* court, I have concluded that the error Hailey complains of is harmless beyond a reasonable doubt.

Of the five factors mentioned by the Fourth Circuit in *Williams*, I place the most weight in my analysis on numbers 1 (use to which prosecution puts accused's silence), 3 (quantum of other evidence of guilt), 4 (intensity and frequency of reference), and 5 (opportunity for trial court to declare mistrial or give curative instructions).

■ The brief reference to Hailey's postarrest silence by the Commonwealth's Attorney during cross-examination was, in my opinion, not nearly as egregious or prejudicial as the situations presented in either *Reid* or *Williams*. Thus, I do not feel that the use the prosecution put Hailey's silence or the intensity and frequency of that reference was that damaging.

Likewise, I find the other evidence of guilt to be overwhelming. Clardy, the complaining witness, testified in great detail as to how Hailey robbed and abducted him at gunpoint on the day in question. Indeed, as I see it, the jury was clearly justified in convicting Hailey on Clardy's testimony alone.

Key portions of Clardy's account of the events were also corroborated by at least three other witnesses. Otis Brandon described how he realized an armed robbery was in progress when he saw Hailey hide the revolver and when Clardy got his attention by stepping on his foot and winking. Barbara Hudkins elaborated on the fact that Clardy did not play cards and that playing cards were sold in the store. Sheriff Woody Bane substantiated Clardy's testimony that he had not been drinking that day and that he was quite upset when the police arrested Hailey.

Furthermore, although the trial judge never actually ruled on defense counsel's

objections to the references to Hailey's post-arrest silence, the curative instruction which he gave was adequate in explaining to the jury that Hailey's decision to exercise his right to remain silent should not be considered as evidence. A similar such instruction proposed by defense counsel was refused by the trial judge in *Reid.* 550 F.2d at 1004.

As to the remaining factor of who elected to pursue the line of questioning, I do not consider this aspect of the *Williams* test to have much bearing on the situation presented here. It is true that the Commonwealth's Attorney initiated the objectionable questioning, but this does not prevent the comment from being harmless beyond a reasonable doubt.

For the above-stated reasons, Respondents' Motion for Summary Judgment is GRANTED.

An appropriate order will issue.

The Clerk is directed to send certified copies of this Memorandum Opinion to the Petitioner and to counsel of record for the Respondents.